UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. **2:19 cr 202** |
| Plaintiff | ) | |
| vs. | ) JUDGE | **Judge Morrison** |
| THOMAS ROMANO | ) | 21 U.S.C. § 841(a)(1) |
| | ) | 21 U.S.C. § 841(b)(1)(c) |
| Defendant | ) | 18 U.S.C. § 2 |
| | ) | FORFEITURE ALLEGATIONS |
| | ) | <u>INDICTMENT</u> |

**The GRAND JURY charges:**

At times material to this Indictment:

<span style="font-variant:small-caps">Defendant</span>

1. Defendant THOMAS ROMANO (ROMANO) was a Medical Doctor in the State of Ohio, licensed under State Medical Board of Ohio Medical License # 35.047291.

2. ROMANO owned and operated a medical practice under his name. This practice was located at 205 North 5th Street, Martin's Ferry, Ohio 43935.

3. As part of his practice, ROMANO prescribed controlled substances, including highly-addictive opioids. ROMANO was registered with federal and state authorities to prescribe Schedule II-V controlled substances at his practice.

4. ROMANO was the only individual reportedly prescribing controlled

substances at his practice. He employed office and medical staff at his office, but was the only licensed Medical Doctor at his practice.

## GENERAL ALLEGATIONS AND TERMINOLOGY

### CONTROLLED SUBSTANCES ACT

5. The Controlled Substances Act ("CSA"), Title 21, United States Code, Section 841(a) *et.seq.* and Title 21, Code of Federal Regulations, Section 1306.04, governed the manufacture, distribution, and dispensation of controlled substances in the United States. The CSA and the Code of Federal Regulations (CFR) contained definitions relevant to this Indictment, some of which are set forth below.

6. The term "controlled substance" meant a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV and V, as designated by Title 21, United States Code, Section 802(c)(6), and the CFR.

7. The designation "Schedule II" meant the drug or other substance had a high potential for abuse; the drug had a currently accepted medical use with severe restrictions; and abuse of the drug or other substance may have led to severe psychological or physical dependence.

8. The designation "Schedule IV" meant the drug or other substance had a low potential for abuse relative to substances that were listed as Schedule III. However, concurrent use of some Schedule II (such as opioids) and Schedule IV controlled substances (such as benzodiazepines) greatly increased a patient's risk of overdose and death.

9. The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance.

10. The term "distribute" meant to deliver (other than by administering or dispensing) a controlled substance.

11. The term "practitioner" meant a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which she or he practiced, to dispense a controlled substance in the course of profit.

12. The Drug Enforcement Administration (DEA) issued registration numbers to qualifying doctors, who thereby became authorized to dispense Schedule II, III, IV, and V controlled substances. To issue a prescription for a controlled substance, a doctor must have had a DEA registration number for each location in which they were dispensing medicine, and for each state where the doctor was prescribing controlled substances.

13. The term "dosage" was the amount, frequency, and number of doses of medication authorized by a practitioner, who had been issued a DEA registration number.

14. The term "prescription" meant an order for medication which was dispensed to or for an ultimate user but does not include an order for medication which is dispensed for immediate administration to the ultimate user.

3

15. Title 21, Code of Federal Regulations, Section 1306.04 provided that "[a]ll prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner."

16. Under the CSA and CFR, a prescription for a controlled substance was unlawful unless issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice.

17. Oxycodone, oxycontin, oxymorphone, and methadone were Schedule II opioid controlled substances.

18. Alprazolam (commonly known by brand name Xanax®), clonazepam (commonly known by brand name Klonopin®), and diazepam (commonly known by brand name Valium®) were Schedule IV benzodiazepine controlled substances.

19. Carisoprodol was a Schedule IV muscle relaxant controlled substance, commonly known by the brand name Soma®.

## COUNTS ONE THROUGH TWENTY
### UNLAWFUL DISTRIBUTION AND DISPENSING OF CONTROLLED SUBSTANCES

20. Paragraphs 1 through 19 of the Indictment are incorporated by reference as though fully set forth herein.

21. On or about the dates set forth below, in the Southern District of Ohio, and elsewhere, the defendant THOMAS ROMANO knowingly, intentionally, and

4

unlawfully dispensed and distributed, and caused to be dispensed and distributed, outside the usual course of professional practice and not for a legitimate medical purpose, the controlled substances listed below, each of which constitutes a separate count of this Indictment:

| Ct. | Patient | Date of Written Prescription | Controlled Substance(s), Prescriptions |
|---|---|---|---|
| 1 | M.C. | 6/1/2015 | Oxycodone; Oxycontin; Clonazepam |
| 2 | M.C. | 8/21/2015 | Oxycontin; Clonazepam |
| 3 | M.C. | 1/2/2016 | Oxycodone; Oxycontin; Oxymorphone |
| 4 | M.M. | 7/21/2015 | Oxycodone; Oxycontin; Clonazepam |
| 5 | M.M. | 8/17/2015 | Oxycodone; Oxycontin |
| 6 | T.M. | 1/19/2015 | Oxycodone; Methadone; Clonazepam; Carisoprodol |
| 7 | T.M. | 5/5/2016 | Oxycodone; Methadone; Clonazepam; Carisoprodol |
| 8 | T.M. | 3/8/2017 | Oxycodone; Methadone; Clonazepam; Carisoprodol |
| 9 | D.N. | 10/8/2014 | Oxycodone; Oxycontin |
| 10 | D.N. | 1/28/2015 | Oxycodone; Oxycontin; Alprazolam |

| Ct. | Patient | Date of Written Prescription | Controlled Substance(s), Prescriptions |
|---|---|---|---|
| 11 | D.N. | 10/19/2016 | Oxycodone; Oxycontin; Alprazolam |
| 12 | J.S. | 10/12/2015 | Oxycodone; Oxycontin |
| 13 | J.S. | 11/6/2015 | Oxycodone; Oxycontin |
| 14 | J.S. | 1/2/2016 | Oxycodone; Oxycontin |
| 15 | J.T. | 1/7/2015 | Oxycodone; Oxymorphone; Oxymorphone; Clonazepam; Carisoprodol |
| 16 | J.T. | 7/18/2016 | Oxycodone; Oxymorphone; Oxymorphone; Clonazepam; Carisoprodol |
| 17 | P.T. | 12/10/2014 | Oxycodone; Oxymorphone; Oxymorphone; Carisoprodol |
| 18 | P.T. | 11/6/2015 | Oxycodone; Oxymorphone; Oxymorphone; |
| 19 | P.T. | 6/20/2016 | Oxycodone; Oxymorphone; Oxymorphone; Diazepam |
| 20 | P.T. | 1/2/2017 | Oxycodone; Oxymorphone; Oxymorphone; Diazepam |

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

## FORFEITURE ALLEGATIONS

22. The allegations contained in paragraphs 1 through 21, and specifically Counts 1 through 20, are incorporated here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853.

23. Upon conviction of a violation of Title 21, United States Code, Section 841, as alleged in Counts 1 through 20 of this Indictment, the defendant THOMAS ROMANO shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

24. The property to be forfeited includes, but is not limited to, the following:

    a. any property, real or personal, that constitutes or is derived, directly or indirectly, as the result of such violation;

    b. any DEA license(s) for ROMANO; and

    c. any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

25. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    i. cannot be located upon the exercise of due diligence;

7

    ii.    has been transferred or sold to, or deposited with, a third party;

    iii.    has been placed beyond the jurisdiction of the Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §982(a)(7), 28 U.S.C. § 2461(c), and Title 21, United States Code, Section 853(a).

A TRUE BILL.

s/Foreperson
FOREPERSON

BENJAMIN C. GLASSMAN
United States Attorney

ALLAN J. MEDINA
United States Department of Justice
Acting Chief, Health Care Fraud Section
Criminal Division, Fraud Section

CHRISTOPHER M. JASON
Trial Attorney
United States Department of Justice, Criminal Division