IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:19-CR-202 |
| v. | : | JUDGE WATSON |
| THOMAS ROMANO, | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM CONTRA PLAINTIFF'S MOTION FOR *DAUBERT* HEARING AND TO EXCLUDE TESTIMONY FROM DR. JAMES MURPHY

Defendant, through undersigned counsel, respectfully submits that Plaintiff's request to exclude the testimony of Dr. James Murphy lacks merit, would deprive Defendant of his right to due process, and must be denied. The admissibility of Dr. Murphy's expert testimony is established in the following Memorandum Contra.

Respectfully submitted,

/s/ Samuel H. Shamansky
SAMUEL H. SHAMANSKY CO. L.P.A.
Samuel H. Shamansky (0030772)
523 South Third Street
Columbus, Ohio 43215
(614) 242-3939 – Phone
(614) 242-3999 – Fax
shamanskyco@gmail.com

Counsel for Defendant

## MEMORANDUM

Defendant does not take issue with Plaintiff's general account of the procedural history of this case. Therefore, in the interest of brevity, Defendant will focus his analysis on the contours of Federal Rule of Evidence 702 and the remainder of Plaintiff's Motion.

Plaintiff does not dispute the general relevance of Dr. Murphy's expert testimony. Rather, Plaintiff argues that Dr. Murphy's expert testimony is inadmissible as it not based on sufficient facts or data. (Doc. 46, Pages 6-7). Specifically, Plaintiff contends that Dr. Murphy's testimony must be excluded in its entirety due to his alleged failure to consider the medical records related to the six patients associated with the superseding indictment. *Id*. Plaintiff further argues that Dr. Murphy has failed to explain the principles, methods, facts, regulations, and medical standards upon which he relied in reaching his opinions *Id*. at 7-12. Finally, Plaintiff claims that Dr. Murphy's opinion contains impermissible legal conclusions regarding the legal standards for "legitimate medical purpose" and "usual course of professional practice." *Id*. at 10. Review of the disclosure report reflects a discussion of these terms as interpreted by the medical community. Any claim to the contrary is demonstrably false.

### Standard

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court held that Fed. R. Evid. 702 tasks trial judges with

"ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In assessing the relevancy and reliability of an expert's testimony, *Daubert* establishes a non-exhaustive list of factors which may be considered, including whether a scientific theory has been or can be tested; whether it has been subjected to peer review and publication; and whether the theory is generally accepted in the scientific community. *Id.* at 593-94. Because these factors may not apply in every instance, the trial court has broad latitude in determining the reliability of an expert witness's testimony. *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137 (1999). *See Surles ex rel. Johnson v. Greyhound Lines, Inc.* 474 F.3d 288, 295 (6th Cir. 2007) (the Court's "gatekeeping inquiry is context-specific and must be tied to the facts of a particular case.").

### Qualifications

Plaintiff does not challenge the sufficiency of Dr. Murphy's qualifications in the fields of pain management and addition medicine. It is uncontested he has developed specialized knowledge, skill, and experience in diagnosing and treating pain related disorders. This experience includes the operation of a private practice for over twenty years and a specialization in treating patients who suffer from chronic pain. *See*, Defendant's Exhibit A, Curriculum Vitae. Dr. Murphy serves on the board of directors of the Kentucky Harm Reduction Coalition and is the President of the Kentucky Society of Addiction Medicine. *Id.* Moreover, Dr. Murphy is board certified in the fields of pain medicine, addiction medicine, and anesthesiology. *Id.*

As reflected by his report, the treatment standard involved in this matter are the same as those he applies in his own practice on a day-to-day basis. In the absence of any argument to the contrary, Defendant submits that Dr, Murphy is sufficiently qualified to offer his opinions relative to what constitutes a legitimate medical purpose and falls within the usual course of

treatment applicable in chronic pain management.

### Sufficient Facts and Data

Defendant acknowledges that Dr. Murphy's disclosure report did not specifically identify each patient file he reviewed. In an effort to clear up any confusion, Dr. Murphy has provided an affidavit identifying which medical files he reviewed in formulating his opinions. These medical files include each patient listed in the original indictment and the superseding indictment. *See*, Defendant's Exhibit B, Affidavit of Dr. James Patrick Murphy (hereinafter "Dr. Murphy Aff."), ¶ 4. Dr. Murphy's opinions were also based, in part, on correspondence from the State Medical Board of Ohio, investigative reports from the Ohio Board of Pharmacy, and various prescription reports and summaries. *See*, Defendant's Exhibit C, Disclosure of Dr. James Patrick Murphy as Expert Witness, Page 3. In short, Dr. Murphy's opinion is based on the same facts, data, and records as those reviewed by the Government's expert.

### Principles and Methods

Plaintiff next argues that Dr. Murphy failed to provide methodological foundation for his findings. (Doc. 46, Pages 7-10.). As stated above, Dr. Murphy's education and board certification in pain treatment indicate that he has ample knowledge qualifying him to assess Defendant's treatment and prescription practices. Dr. Murphy specifically cited his extensive training and practical experience as part of the basis for his opinions regarding Defendant's treatment and prescription practices. *See*, Dr. Murphy Aff., ¶ 6; Exhibit C, Pg. 7. Moreover, Dr. Murphy is familiar with and applied the standards governing pain specialists, including those provided by the American Medical Association, World Health Organization, and the American Academy of Pain Medicine. Exhibit C, Pg. 5. Defendant submits that Dr. Murphy's focused practical experience and familiarity with the relevant medical standards provides a reliable basis

4

for reviewing and offering an opinion as to the prescription practices utilized by Defendant in treating the patients identified in the superseding indictment.

### Application of the Principles and Methods to the Facts

Finally, Plaintiff argues that Dr. Murphy's testimony should be excluded because he does not explain which specific medical principles and methodologies support his opinion. (Doc. 46, Pages 10-12.). Stated another way, Plaintiff claims that Dr. Murphy failed to apply these principles to any of the specific facts in this case. *Id.* at p. 11. This argument is entirely disingenuous. Dr. Murphy has clearly indicated that he applied the standards established by the American Medical Association, World Health Organization, and the American Academy of Pain Medicine in his analysis of each patient's file, and in each case determined that Defendant's conduct served a legitimate medical purpose and fell within the usual course of medical practice

In short, the Government wishes to challenge Dr. Murphy's opinion because he has provided a general opinion that Defendant's conduct in each case was medically appropriate, rather than dissecting each case to approve each decision ever made by Defendant. While the government may desire a more exhaustive analysis, it is not necessary under Fed. Crim. R. 16(b)(1)(C), which requires only a summary, and its absence is not an adequate basis upon which to assume that Dr. Murphy did not engage in a proper analysis or exclude his expert testimony at trial. To the extent that the government believes that Dr. Murphy made some specific and articulable mistake in his analysis, it is welcome to explore that purported deficiency through its cross-examination at trial.

### CONCLUSION

Defendant submits that Dr. Murphy's practical experience and qualifications as a board-certified pain specialist provides a reliable basis for defining whether the prescriptions issued to

the patients named in the superseding indictment were for a legitimate medical purpose and fall within the usual course of professional practice. Dr. Murphy's opinions were also based on sufficient facts and information. Accordingly, Defendant respectfully submits that Dr. Murphy meets the qualifications of Federal Rule of Evidence 702.

Respectfully submitted,

/s/ Samuel H. Shamansky
SAMUEL H. SHAMANSKY CO., L.P.A.
Samuel H. Shamansky (0030772)
523 South Third Street
Columbus, Ohio 43215
P: (614) 242-3939
F: (614) 242-3999
shamanskyco@gmail.com

Counsel for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to Christopher Jason, Assistant United States Attorney, 303 Marconi Blvd., Suite 200, Columbus, Ohio 43215, on February 21, 2022.

/s/ Samuel H. Shamansky
SAMUEL H. SHAMANSKY



EXHIBIT A

# James Patrick Murphy MD MMM FASAM

Murphy Pain Center (medical office)
720 Rolling Creek Drive, Suite 101
New Albany, Indiana 47150
Phone: (502) 736-3636, Fax: (877) 497-8259
Website: murphypaincenter.com

James Patrick Murphy MD (mailbox)
P.O. Box 436864
Louisville, Kentucky 40253-6864
Email: james.murphy.2@louisville.edu
State Licenses: Kentucky, Indiana

## CERTIFICATIONS

American Board of Anesthesiology*
- Consultant in Anesthesiology (lifetime certification) — 1994
- Subspecialty Certification in Pain Medicine — 1996
- Subspecialty Recertification in Pain Medicine — 2007
- Subspecialty Recertification in Pain Medicine — 2017
- Maintenance of Certification in Pain Medicine — current

American Board of Pain Medicine (lifetime certification) — 1997

American Board of Preventive Medicine*
- Subspecialty Certification in Addiction Medicine — 2017
- Maintenance of Certification in Addiction Medicine — current

American Board of Addiction Medicine, Certification in Addiction Medicine — 2014
American Society of Addiction Medicine, Certification in Addiction Medicine — 2004

## EDUCATION AND TRAINING

| | |
|---|---|
| University of Southern California - Master of Medical Management (MMM) | 2013 |
| Mayo Clinic, Rochester, MN - Pain Management Fellowship | 1998 |
| University of Louisville - Anesthesiology Residency | 1992 |
| Naval Aerospace Medical Institute - Aerospace Medicine/Naval Flight Surgeon | 1987 |
| Naval Medical Center, San Diego, CA - Psychiatry Internship | 1986 |
| University of Louisville School of Medicine - Doctor of Medicine | 1985 |
| Westminster College, Fulton, MO - B.A. English | 1981 |

## ACADEMIC APPOINTMENTS

University of Louisville School of Medicine
- Assistant Clinical Professor, Department of Anesthesiology — 1998 - 2000
  2004 - current

Mayo Medical School, Rochester, MN
- Instructor of Anesthesiology — 1997 - 1998

*American Board of Medical Specialties member board

# ASSOCIATIONS

Kentucky Society of Addiction Medicine
- President-elect                                            2018 - 2020
- President (inauguration summer 2020)                       2020 - 2022

American Society of Addiction Medicine, Fellow (FASAM)
- Nominated to ASAM Board of Directors (election summer 2020)

American Medical Association, Pain Task Force
- Representing the American Society of Addiction Medicine    2018 - current

Greater Louisville Medical Society
- President                                                  2013-2014

Kentucky Medical Association
- Community Connector Leadership Program                     2013

Kentucky Harm Reduction Coalition
- Board of Directors                                         2019 - current

Kentucky Department for Public Health
- Displaced Opioid Patient Workgroup                         2019 - current

# EMPLOYMENT HISTORY

President and Medical Director
- Murphy Pain Center                                         2000 - current

Associate Consultant
- Mayo Clinic, Rochester, MN                                 1997 - 1998

Anesthesiologist
- Heartland Anesthesiologists, Elizabethtown, KY             1992 - 1997

Physician / Flight Surgeon
- United States Navy (Commander)                             1985 - 1989

# INTERNATIONAL VOLUNTEER MISSIONS

Operation Smile International Medical / Surgical Missions (Anesthesiologist)
- Philippines (1992, 1994)
- Brazil (1998, 2002, 2003, 2004, 2005)
- Nicaragua (2008)

## PRESENTATIONS (2019-2020, selected)

Kentucky Regional Health Information Organization, Project ECHO
  • *Marijuana and CBD* webinar • January 9, 2020

Methodist Hospital Medical Staff Educational Seminar
  • *Prescribing Controlled Substances for Chronic Pain* • Henderson, KY, October 25, 2019

Kentucky Pharmacists Association, Northern Kentucky Educational Seminar
  • *Assumption of Care and Titration Management for the Displaced Pain Patient on Chronic Opioid Therapy* • Florence, KY, October 12, 2019

Kentucky Court of Justice Fall Summit, Louisville, KY
  • Responsive Education to Support Treatment in Opioid Recovery • September 4, 2019

Kentucky Society of Addiction Medicine, Annual Meeting and Educational Seminar
  • *Caring for the Displaced Chronic Pain Patient* • Lexington, KY, June 29, 2019

Appalachian Regional Healthcare, McDowell Hospital Medical Staff Educational Seminar
  • *Treating Pain with Controlled Substances* • McDowell, KY, April 24, 2019

Kentucky General Assembly, Expert testimony before the House Judiciary Committee
  • House Bill 136, Legalization of Medical Marijuana • Frankfort, KY, March 6, 2019

## PUBLICATIONS, NEWSLETTERS AND RESEARCH (2019 - 2020, selected)

Shields, L., Johnson, T., Murphy, J. et al. (2019). Decline in primary care providers' prescribing of Schedule II opioids following the implementation of federal and state guidelines. *Journal of Opioid Management*, 15(2):111-118, DOI: 10.5055/jom.2019.0492

Guidance on Displaced Patients. *Kentucky Board of Medical Licensure, Spring Newsletter* (2019): "The Board...would like to express its appreciation to Dr. Murphy and the Greater Louisville Medical Society for their assistance with this important issue." 5-Step Initial Approach to Caring for the Displaced Patient on Chronic Opioid Therapy. *Louisville Medicine*, September 2018.

Capano, A., et al. (2019). Evaluation of the effects of CBD hemp extract on opioid use and quality of life indicators in chronic pain patients: a prospective cohort study. *Postgraduate Medicine*, DOI: 10.1080/00325481.2019.1685298. Acknowledgments: James Murphy granted access to his patient population for this study and allowed enrollment and data collection in his clinic, Murphy Pain Center.

## OTHER

Kentucky Shakespeare, the official Shakespeare Festival of the Commonwealth of Kentucky
  • *Shakespeare with Veterans*, bringing together veterans of the U.S. Armed Forces, many with some form of PTSD or moral injury, and providing an opportunity for camaraderie and a higher sense of purpose that represents what veterans loved most during their military service (2020).

•

James Patrick Murphy, MD MMM FASAM
February 3, 2020



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:19-CR-202 |
| v. | : | JUDGE WATSON |
| THOMAS ROMANO, | : | |
| Defendant. | : | |

### AFFIDAVIT OF DR. JAMES PATRICK MURPHY

I, Dr. James Patrick Murphy, having been duly sworn according to law, hereby state as follows:

1. I am a board-certified physician in New Albany, Indiana specializing in the fields of pain medicine, addiction medicine, and anesthesiology. Following my pain management fellowship, I entered private practice and started the Murphy Pain Center where I have treated patients suffering from chronic pain for over 22 years. Along with serving on the board of directors of the Kentucky Harm Reduction Coalition, I also serve as the President of the Kentucky Society of Addiction Medicine. Based on my experience and formal training, I have provided consultation on various issues related to pain management and addiction in the past.

2. I was retained by Attorney Samuel H. Shamansky to review patient files, prepare a report, and provide testimony related to the prescribing practices of the above-named Defendant, Dr. Thomas Romano.

3. The materials I reviewed in formulating my opinion as to Dr. Romano's prescribing practices included the medical records of patients M.C., M.M., T.M., D.N., J.S., J.T., and P.T., as well as records for patients A.B., K.C., J.P., M.R., E.W., and B.W. Additionally, I also reviewed medical records for patients who were not named in either the original indictment or the superseding indictment, including records of patients D.C., D.D., S.W., and K.W.

4. Through oversight, while my report specifically references the seven patients in the original indictment it does not specifically mention the patients in the superseding indictment. To be clear, I was provided and conducted a thorough review of all patient records in the original indictment and the superseding indictment.

5. Dr. Romano's treatment of the patients referenced in the original indictment and the superseding indictment were consistent with the usual course of professional practice.

Moreover, the medications prescribed to these patients were in each instance for a legitimate medical purpose.

6. Given my education and practical experience, I am familiar with the medical treatment and documentation standards for pain specialists. As stated in my report, I draw on standards specifically governing pain specialists, including those published by the American Medical Association, World Health Organization, and the American Academy of Pain Medicine.

7. The conclusions expressed in my report are held to a reasonable degree of scientific certainty and are based, in part, on my comprehensive review of the patient files for those individuals named in the original and superseding indictments, my education, and numerous years of experience in the fields of medicine and pain management.

I, Dr. James Patrick Murphy, swear and affirm that I have read this document and, to the best of my knowledge and belief, the facts and information stated in this document are true, accurate and complete. I understand that if I do not tell the truth, I may be subjected to penalties for perjury.

_____
Dr. James Patrick Murphy

STATE OF Kentucky
COUNTY OF Jefferson, SS:

Sworn to or affirmed and subscribed before me by Dr. James Patrick Murphy this 21st day of February 2022.

_____
NOTARY PUBLIC

Debra E. Davidson
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # KYNP40512
MY COMMISSION EXPIRES 11-15-25

2

EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FEBRUARY 4, 2022

UNITED STATES OF AMERICA

v.

THOMAS ROMANO

INDICTMENT NO. 2:19-cr-00202-SDM
Filed on September 12, 2019

## DISCLOSURE OF DR. JAMES PATRICK MURPHY AS EXPERT WITNESS

### OVERVIEW

I was asked to write a report regarding the prescribing practices of Dr. Thomas J. Romano (Defendant) in relation to INDICTMENT NO. 2:19-CR-00202-sdm. My opinion is that Dr. Romano's prescribing practices in each case mentioned in the indictment was for a legitimate medical purpose and in the usual course of professional practice.

### RELEVANT EXPERIENCE

I attended medical school at the University of Louisville School of Medicine, followed by a psychiatry internship at the Naval Medical Center in San Diego. Next, I attended training as a Naval Flight Surgeon at the Naval Aerospace Medical Institute in Pensacola, Florida. I served on active duty as a Navy flight surgeon from 1987 – 1989. Upon completing my tour of active duty in the United States Navy, I attended anesthesiology residency training at the University of Louisville from 1989 – 1992. Later, I attended subspecialty fellowship training in pain management at the Mayo Clinic from 1997 – 1998, where I also served as an Associate

1

Consultant and Instructor of Anesthesiology for the Mayo Medical School. After my pain management fellowship, I entered private practice and started the Murphy Pain Center where, for over 22 years, I have treated and continue to treat patients with chronic pain, utilizing multiple modalities including controlled substances and interventional pain treatment procedures. Also, I actively practice addiction medicine and treat patients with substance use disorders. I am certified by three separate and distinct American Board of Medical Specialties boards in three specialties: Anesthesiology, Pain Medicine, and Addiction Medicine. I have a Master of Medical Management business degree from the University of Southern California. Since 2004, I have served the University of Louisville School of Medicine as a gratis faculty member in the Department of Anesthesiology. In 2021, I was awarded the designation of Distinguished Fellow by the American Society of Addiction Medicine. I serve on the American Medical Association's Substance Use and Pain Care Task Force. I am the President of the Kentucky Society of Addiction Medicine and serve on the board of directors of the Kentucky Harm Reduction Coalition. I have provided consultation on various projects related to pain management and addiction to the Kentucky Board of Medical Licensure as well as the Indiana Professional Licensing Agency.

My opinions are based on my knowledge of this case, my experience as an anesthesiologist, addiction medicine specialist, and pain management specialist. I have personally cared for patients suffering with medical problems similar to the patients named in the indictment. My opinions are to a reasonable degree of medical certainty. Should additional information become available, I reserve the right to change or amend these opinions.

**MATERIALS REVIEWED**

I have reviewed materials provided to the Defendant through discovery, which include medical files on seven patients with initials M.C., M.M., T.M., D.N., J.S., J.T., and P.T.

Materials reviewed also included:

1. Fourteen additional patient records, provide to me by counsel
2. Correspondences from the State Medical Board of Ohio
3. State of Ohio Board of Pharmacy Reports of Investigation
4. Department of Justice, Report of Investigation, Interview of Dr. Benedict Belcik, D.O.
5. Memorandum of Interview, Bureau of Workers' Compensation, June 3, 2019
6. Report of Interview, Office of Inspector General
7. Reports of Conversation, Office of Inspector General
8. Expert Review by Dr. Timothy Munzing, 8/13/2019
9. Various prescription drug monitoring reports and summaries
10. Ohio Medical Board Complaint, dated 3/18/2019

**STANDARD OF REVIEW**

As this is a criminal case, as opposed to a civil proceeding or medical board issue, it is imperative that a medical expert reviewing Dr. Romano's case understand certain legal standards stipulated in the statues for prescribing opioids under 21 U.S.C. § 841(a)(1). These standards differ from the standards to be applied in a medical malpractice case or a medical licensing case. The legal standard under 21 U.S.C. § 841(a)(1) is that a controlled substance may only be prescribed, administered, or dispensed for a legitimate medical purpose by a physician acting in the usual course of professional practice. The 2006 DEA Practitioner's Manual has said that federal courts have long recognized that it is not possible to expand on the phrase "legitimate medical purpose in the usual course of professional practice" in a way that will provide definitive guidelines to address all the varied situations physicians may encounter. Therefore, the courts look to recognized medical experts, to clarify the meaning of "legitimate medical purpose in the usual course of professional practice." As an experienced and recognized medical expert

3

specializing in pain management and addiction medicine, I am fully capable of explaining for the court, the right true meaning of this crucial phrase, upon which determining criminal versus legitimate prescribing in federal cases, such as Dr. Romano's, is solely dependent.

First, regarding the phrase "legitimate medical purpose," the American Medical Association's Code of Medical Ethics is very clear: "A patient-physician relationship exists when a physician serves a patient's medical needs." Each medication mentioned in the indictment was prescribed by Dr. Romano in an effort to treat a medical condition for which the medication is commonly prescribed by physicians. Therefore, each medication mentioned in the indictment was prescribed for a legitimate medical purpose.

Secondly, the phrase "usual course of professional practice" must not be confused with "standard of care," as it has a very different meaning. "Usual course of professional practice" refers to the usual activities of a health care professional in providing care. In contrast, "standard of care," as would apply in a medical malpractice case, refers to medical care provided in a manner that physicians of similar training might have provided under similar circumstances. Rather than federal criminal courts, state medical boards, credentialing bodies, civil enforcement actions, and medical malpractice litigations are examples of venues more properly suited to adjudicate disagreements over departures of the "standard of care." In truth, neither a departure from the standard of care nor a departure from the usual course of professional practice is necessarily a criminal act. Regardless, Dr. Romano's treatment of the patients named in the indictment was in every instance consistent with the usual course of professional practice expected of a physician practicing medicine.

Medicine is a science of uncertainty and an art of probability. Medical standards and clinical guidelines are not infallible and change over time. Clinical practice guidelines continually evolve and rightly remain subject to debate among medical experts. Uncertainty in medicine is universal and judgment is often difficult. This has been known since the age of

4

Hippocrates and is why virtually every clinical guideline includes a disclaimer such as that found in the 2016 Guideline for Prescribing Opioids for Chronic Pain, which states: "The recommendations in the guideline are voluntary, rather than prescriptive standards."

Instead of clinging to the premise that Dr. Romano's care must rigidly adhere to a published guideline or the opinions held by another physician, a proper review of his practice in the context of federal law must focus solely, without exception, on whether the care he provided was for a legitimate medical purpose and in the usual course of professional practice.

Considering the teachings of venerable physicians throughout the ages, foundational medical ethics, and respected bodies such as the American Medical Association, the World Health Organization, and the American Academy of Pain Medicine, the usual course of professional practice for a physician can be summarized as: knowledgeable, reasoned, and intuitive clinical judgment, with beneficent intent, leading to therapeutic action to restore, preserve, or improve health. Dr. Romano's treatment of his patients in the indictment, and his prescribing of the medications noted in the counts against him, were consistent with this right and true definition of the practice of medicine. And specifically, the medications he prescribed for the patients noted in the indictment, were in each instance, prescribed for a legitimate medical purpose and in the usual course of professional practice.

**CONCLUSIONS**

First of all, it is indisputable that Dr. Romano is a highly credentialled, highly skilled, and highly experienced physician, medical scholar and educator. He certainly knows how to treat pain. Applying the standard outlined above, I conclude that Dr. Romano's treatment of the seven patients noted in the indictment was for a legitimate medical purpose in the usual course of professional practice in each instance. The records document a range of clinical options utilized by Dr. Romano to assess the source of his patients' pain and his attempt to offer treatment

5

consistent with the physician's "moral imperative" described in the AMA Code of Ethics to care for the patient and alleviate suffering.

Throughout the patient files I reviewed, including the seven patients named in the indictment, there is adequate evidence to support the devised plan of care. Dr. Romano referred his patients for laboratory studies, treatments, and consultations where necessary. His record keeping adequately served his needs. As a reviewer, the requisite information to justify treatments was discernable to me from information found throughout the patient clinical notes and additional data documented throughout the entirety of the patient records. The patient records tell the stories of legitimate therapeutic patient-provider relationships between Dr. Romano and his patients. Perhaps a detached or less experienced reviewer of these records might be inclined to be critical of a specific therapeutic decision, a certain note with documentation that is subjectively illegible, or even an omission or mistake. But in a profession like medicine, where uncertainty is the norm, tolerance of differing opinions must be respected, and condemnation of Dr. Romano's practice based upon one's personal preferences or interpretation of clinical guidelines is wrong.

Without question, Dr. Romano treated very ill patients, many of whom had been denied care from other practices in the community for various reasons. Dr. Romano offered his patients a range of therapeutic and diagnostic options, not simply opioids. Dr. Romano's patients had complex medical, psychological, and social afflictions, and the care he provided was in an attempt to alleviate their suffering. Patients came to Dr. Romano already habituated on controlled substances by previous providers. No credible medical expert can say with a broad brush that such patients, physically dependent on opioids, must be forced to taper against their will. Such a practice can be more harmful than beneficial, and can lead to catastrophic consequences for the patient. The decision to continue stable treatment, taper, or discontinue opioids or other controlled substances (e.g., benzodiazepines and carisoprodol) must be

respectful of the patient's right to autonomy and the clinical judgment of the physician in weighing the benefits against the risks for the individual patient.

I evaluated Dr. Romano's prescribing for each patient noted in the indictment. I considered every prescription in view of the totality of circumstances particular to each patient. Patients were evaluated, diagnosed, treated, and had followed up visits for reassessment. Outside consultations and tests were sought when necessary. Documentation was adequate to meet the needs of Dr. Romano. Prescriptions were dispensed with the intent to comfort and treat medical conditions for which the medication is commonly prescribed. Dr. Romano's care plans were consequent to reasoned clinical judgment, observations, and other data he used to inform his decision-making, in an effort to alleviate his patients' suffering. This is, in fact, the essence of legitimate medical purpose and the usual course of professional practice. Thus, I can conclude that for each patient named in the indictment, Dr. Romano prescribed the medications listed in the indictment for a legitimate medical purpose and in the usual course of professional practice.

Respectfully,

James Patrick Murphy, MD, MMM, DFASAM