UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**United States of America,**

          v.

**Thomas J. Romano,**

          **Defendants.**

Case No. 2:19-cr-202

Judge Michael H. Watson

## OPINION AND ORDER

The Government moves to exclude the testimony of Thomas J. Romano's ("Defendant") expert witness, James Murphy, M.D. ("Dr. Murphy"). ECF No. 46. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

As an initial matter, the Government requests a *Daubert* hearing. *See, e.g.*, Mot. 3, ECF No. 46. That request is **DENIED**. The Court is able to evaluate the issues without the assistance of a hearing. *See Clark v. W & M Kraft, Inc.*, 476 F. App'x 612, 616 (6th Cir. 2012) (instructing that, when deciding a *Daubert* motion, "[t]here is no one method the district court must follow, nor does this decision even have to take place at a preliminary hearing" (citations omitted)).

### I.    BACKGROUND

In September 2019, Defendant was indicted on twenty counts of unlawful distribution and dispensing of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Indict. ¶¶ 20–21, ECF No. 4. The

original Indictment alleges that Defendant unlawfully prescribed certain controlled substances to the following seven patients: M.C., M.M., T.M., D.N., J.S., J.T., and P.T.  *Id.* ¶¶ 1–21.  In June 2020, a Grand Jury returned a thirty-four-count Superseding Indictment with substantially the same allegations.  *See generally* Superseding Indictment, ECF No. 30.  The Superseding Indictment adds counts related to prescriptions for the following six patients: K.C., M.R., E.W., B.W., J.P., and A.B.  *Id.* ¶ 21.

At trial Defendant seeks to offer the testimony of Dr. Murphy.  *See* Report, ECF No. 46-1.  Dr. Murphy attended medical school at the University of Louisville School of Medicine and completed several years of post-graduate training.  *Id.* at 1.  Dr. Murphy has been in private practice for over twenty years, specializing in pain management and treating patients with substance use disorders.  *Id.* at 2.  He is board certified in anesthesiology, pain medicine, and addiction medicine.  *Id.*

In preparing his report, Dr. Murphy reviewed the medical files for all the patients named in the Superseding Indictment.  Murphy Aff. ¶¶ 3–4, ECF No. 49.  Dr. Murphy also reviewed fourteen additional files from patients not named in either indictment, several investigation reports, the Government's expert report, and other documents related to the investigation.  Report 3, ECF No. 46-1.  Dr. Murphy opined as follows:

> I evaluated [Defendant's] prescribing for each patient noted in the [original] [I]ndictment.  I considered every prescription in view of the totality of circumstances particular to each patient.  Patients were

> evaluated, diagnosed, treated, and had follow[-]up visits for reassessment. Outside consultations and tests were sought when necessary. Documentation was adequate to meet the needs of [Defendant]. Prescriptions were dispensed with the intent to comfort and treat medical conditions for which the medication is commonly prescribed. [Defendant's] care plans were consequent to reasoned clinical judgment, observations, and other data he used to inform his decision-making, in an effort to alleviate his patients' suffering. This is, in fact, the essence of legitimate medical purpose and the usual course of professional practice. Thus, I can conclude that for each patient named in the [original] [I]ndictment, [Defendant] prescribed the medications listed in the [original] [I]ndictment for a legitimate medical purpose and in the usual course of professional practice.

*Id.* at 7. Dr. Murphy based his opinions on his knowledge of the case and his experience as a physician; he cites to medical organizations and their guidance throughout the report. *See generally id*.

## II. STANDARD OF REVIEW

The admissibility of expert witness testimony is governed by Federal Rules of Evidence 702 and 703. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule reflects the well-established judicial precedent that district courts must act as "gatekeepers" in determining the admissibility of such testimony. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir.

2007) (discussing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  "[T]he gatekeeping inquiry must be tied to the facts of a particular case, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  *Id.* at 430 (internal quotation marks and citation omitted).

Although "not a definitive checklist or test," some factors that may bear on the third part of the Rule 702 analysis are:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* at 429 (internal quotation marks and citations omitted).  Moreover, "expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution."  *Id.* at 434.

Additionally, Federal Rule of Evidence 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Moreover, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  *Id*.

The proponent of expert testimony must establish its admissibility by a preponderance of proof.  *Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244, 251

(6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10). Whether to admit expert testimony is within the district court's discretion. *Johnson*, 484 F.3d at 429 (citation omitted).

### III.   ANALYSIS

The Government argues that Dr. Murphy's testimony should be excluded because: (1) he did not use reliable principles and methods; and (2) he did not reliably apply his principles and methods to the facts of the case.[1] Mot. 6–12, ECF No. 46.

### A.   Reliable Principles and Methods

The Government argues that Dr. Murphy's testimony should be excluded because his "opinions are not a product of reliable methods and principles." Mot. 7, ECF No. 46. Specifically, the Government argues that Dr. Murphy's opinions are inadmissible because he relied on only his experience as a physician in

---

[1] Based on Dr. Murphy's representations in his report, the Government initially also argued that his testimony should be excluded because he did not examine the files of those patients named in the Superseding Indictment, but who were not named in the original Indictment. Mot. 6, ECF No. 46. In an affidavit attached to Defendant's Response, Dr. Murphy clarified that he did review the files for all the patients named in the Superseding Indictment, but neglected to properly explain the same in his report. Murphy Aff. ¶¶ 3–4, ECF No. 49. So, the Government abandoned this argument in its Reply. *See, e.g.*, Reply 1, ECF No. 53.

Also in its Reply, the Government brings up some arguments related to Federal Rule of Criminal Procedure 16. *See, e.g.*, *id.* at 3. Because the Government did not raise these arguments in its original motion, and it has not demonstrated any sort of exceptional circumstances, the Court does not consider the Criminal Rule 16 arguments. *See Ryan v. Hazel Park*, 279 Fed. App'x 335, 339 (6th Cir. 2008) (explaining that, absent "exceptional cases or particular circumstances," the Sixth Circuit "has found that an issue raised for the first time in a reply to a response brief in the district court is waived") (citations omitted)).

forming them, he does not "cite any specific regulations, codes, or medical standards," does not set forth his methodological foundation, and does not support his claims with "any generally accepted or peer-reviewed medical criteria." *Id.* at 7–10.

To the contrary, Dr. Murphy's testimony is based on reliable methods and principles. Medical expert witnesses often rely on "valid, peer-reviewed scientific evidence, along with their own clinical and research experience in forming expert opinions." *Clark*, 476 F. App'x at 617 (cleaned up). More to the point: "[t]he exclusion of a medical doctor's professional opinion, rooted in that doctor's extensive relevant experience, is rarely justified in cases involving medical experts." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 427 (6th Cir. 2009) (internal quotation marks and citations omitted); *see also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004) ("*Daubert*'s role . . . is not served by excluding [medical expert] testimony . . . that is supported by extensive relevant experience."). Thus, Dr. Murphy's reliance on his twenty-plus years of experience in pain and addiction medicine is an appropriate foundation for his opinion.

Further, the Court finds that the Government's argument that Dr. Murphy did not support his claim with medical standards or generally accepted medical criteria to be a mischaracterization of Dr. Murphy's report. Throughout his report, Dr. Murphy references organizations like the American Medical Association, the World Health Organization, and guidance like the Drug Enforcement

Administration's Practitioner's Manual. *See generally* Report, ECF No. 46-1. Admittedly, Dr. Murphy does not, for the most part, cite to specific guidance from the sources on which he relied. However, a fair reading of the report is that Dr. Murphy was aware of at least some of the relevant guidance and considered the same in forming his opinions. So, the Government's arguments that Dr. Murphy relied *solely* on his own experience are without merit. Of course, the Government is free to bring up its concerns about specific standards or guidance Dr. Murphy replied upon during cross-examination.

Next, the Court considers the argument that Dr. Murphy's testimony should be excluded because he mis-defined the legal phrases "legitimate medical purpose" and "usual course of professional practice." It is well-settled that "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Thus, to whatever extent Defendant seeks to use Dr. Murphy's testimony to provide legal definitions, he may not do so.

However, "[a] witness' testimony contains a legal conclusion only if the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *United States v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015). The Sixth Circuit has already determined that, in the context of a § 841 case, "legitimate medical purpose" "does not carry with it a 'separate, distinct and specialized meaning' from its medical counterpart," and, thus, a medical expert may properly use that phrase in his testimony. *Id.* at 389

(citation omitted). Similarly, "usual course of professional practice" does not have a specialized legal meaning that is substantially different than its "vernacular understanding of the phrase." *Id.* (discussing an expert's use of the phrase "usual standards of medical practice" analogously to the use of the phrase "legitimate medical purpose"). So, Dr. Murphy may opine as to whether he believes Defendant's conduct was for a "legitimate medical purpose" and within the "usual course of professional practice." *See United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) (holding the district court properly admitted medical expert testimony in a § 841 case that contained the phrases "usual course of professional practice" and "legitimate medical purpose," because the phrases "were used in their ordinary, everyday sense and do not have a separate, distinct and specialized legal significance apart from common parlance" (internal quotation marks and citations omitted)); *see also United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008) ("While failure to comply with the standard of care applicable to a medical specialty does not alone provide a basis for concluding that a physician's activities fall outside the usual course of professional practice, it surely is relevant to that determination."); *United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006) (affirming, in a § 841 case, the admission of medical expert testimony about whether the defendant acted "outside the course of legitimate medical practice" because "it is the extent and severity of departures from the professional norms that underpin a jury's finding of criminal violations").

**B.     Reliable Application**

Next, the Government asserts that Dr. Murphy unreliably applied his principles and methods to the facts of the case. Mot. 10–12, ECF No. 46. The Government argues the following in support of this argument: (1) Dr. Murphy's opinion is his own definition of the legal terms "legitimate medical purpose" and "usual course of professional practice"; and (2) Dr. Murphy does not cite to any specific medical file he reviewed in preparing his report. *Id.*

The Court has already addressed the Government's first argument, *supra*. As to the second argument, the Government is correct that Dr. Murphy's report does not reference any particular patient's file. *See generally* Report, ECF No. 46-1. However, Dr. Murphy represents that he reviewed individual patient files, and the report gives his synthesized view of Defendant's conduct. *Id.* There is nothing to suggest that Dr. Murphy did not consider the individual files and certainly nothing preventing either party from questioning Dr. Murphy as to his opinions about specific patients or prescriptions during trial. Thus, once again, the Government's argument is more appropriately aimed at the weight, rather than the admissibility, of Dr. Murphy's testimony. *Cf. Navarro v. Procter & Gamble Co.*, No. 1:17-CV-406, 2021 WL 868586, at *13 (S.D. Ohio Mar. 8, 2021) (finding that arguments of an expert's alleged "failure to properly isolate or highlight specific attributes" when conducting a survey went "to the weight, not the admissibility," of the expert's testimony); *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 788 (N.D. Ohio 2010) (explaining that, for admissibility of a

document, the document's failure to discuss the potential dangers of a particular chemical "goes to its weight, not its admissibility").

## IV. CONCLUSION

For these reasons, the Government's motion is **GRANTED IN PART**; to whatever extent Defendant intended to use Dr. Murphy's testimony for legal definitions of the phrases "legitimate medical purpose" and "usual course of professional practice," that testimony is excluded. The rest of the Government's motion is **DENIED.**

The Clerk is **DIRECTED** to terminate ECF No. 46.

**IT IS SO ORDERED.**

                               */s/ Michael H. Watson*
                               **MICHAEL H. WATSON, JUDGE**
                               **UNITED STATES DISTRICT COURT**