UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**United States of America,**

    v.

**Thomas J. Romano,**

    **Defendants.**

Case No. 2:19-cr-202

Judge Michael H. Watson

## OPINION AND ORDER

During the pretrial conference, and renewed at trial, Dr. Thomas J. Romano ("Defendant") made an oral motion to exclude the opinion testimony of Dr. Stephanie Le ("Le"), Dr. Benedict Belcik ("Belcik"), and Nurse Practitioner Christopher Broderick ("Broderick," collectively the "Witnesses"). For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Defendant is charged with thirty-four counts of unlawfully distributing or dispensing controlled substances in connection with his medical practice. *See generally*, Superseding Indictment, ECF No. 30.

On February 4, 2022, the Government provided an eight-page letter which purports to be their required disclosures under Federal Rule of Criminal Procedure 16(a)(1)(G) ("Disclosure Letter"). *See* ECF No. 74. The Disclosure Letter begins by identifying Dr. Timothy Munzing ("Munzing"), whom the Government "intends to call, pursuant to Rules 702, 703, and 705 of the Federal

Rules of Evidence" as an "expert witness." *Id*. The Disclosure Letter describes Munzing's anticipated opinion testimony and qualifications over two pages; provides the bases of his opinions; and references Munzing's expert reports. *Id*.

The Disclosure Letter then moves on to a section titled "Medical Testimony." *Id*. In this section, the Government identifies five medical-practitioner-witnesses including Le, Belcik, and Broderick, whom the Government intends to call as "fact witnesses," who treated patients of Defendant, but who are also "qualified medical professionals and whose testimony will include some discussion of their view of the appropriate nature and circumstances of prescribing controlled substances." *Id*. The Government specifies that it was making these disclosures pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence. *Id*.

This section includes a broad, combined overview of the anticipated testimony of the Witnesses, and includes the following individual summaries:

> [ ] Dr. Stephanie Le, M.D. is a pain management medical practitioner in the Weirton, West Virginia area. Patient Patricia Tittle (P.T. in the Superseding Indictment) began seeing Dr. Le after the defendant's indictment. Dr. Le has provided a copy of a patient file she maintained relating to her treatment of Ms. Tittle. This file was previously disclosed to you on or around September 1, 2020. *See* Discovery Production 4 at Bates number DOJ_TR_00513033 – DOJ_TR_00513101. Dr. Le has also been interviewed by investigators on two occasions relating to her treatment of Ms. Tittle, and concerns relating to the defendant's prior prescribing to Ms. Tittle. *See* Discovery Production 6, produced on or around June 29, 2021, at Bates number DOJ_TR_516607 –DOJ_TR_00516610; Discovery Production 7, produced on or around January 13, 2022, at Bates number DOJ_TR_00521935 – DOJ_TR_00521937.

[ ] Dr. Benedict Belcik, D.O. is a doctor of osteopathic medicine. Patient Arrieal Butler (A.B. in the Superseding Indictment) previously sought Dr. Belcik's care in approximately August 2019. Based on this interaction, and Dr. Belcik's subsequent review of the defendant's prescribing to Ms. Butler, Dr. Belcik submitted a complaint to the State of Ohio Board of Pharmacy. This complaint was previously disclosed to you on or around October 15, 2019. *See* Discovery Production X at Bates number DOJ_TR_00012664 – DOJ_TR_00012665. Dr. Belcik has also been interviewed by investigators on two occasions relating to his interaction with Ms. Butler and his concerns about the defendant's prescribing thereto. *See* Discovery Production 1, produced on or around October 15, 2019, at Bates number DOJ_TR_00000230 – DOJ_TR_00000233; Discovery Production 7, produced on or around January 13, 2022, at Bates number DOJ_TR_00521932 – DOJ_TR_00521934.

\* \* \*

[ ] Christopher Broderick is a nurse practitioner at the Youngstown Community Health Center (YCHC) in Youngstown, Ohio. NP Broderick has treated patient Arrieal Butler after the defendant was indicted. YCHC has provided a copy of a patient file NP Broderick maintained relating to the ongoing treatment of Ms. Butler. This file was previously disclosed to you on or around June 29, 2021. *See* Discovery Production 6 at Bates number DOJ_TR_00516369 – DOJ_TR_00516557. NP Broderick has also been interviewed by investigators on one occasion relating to the treatment of Ms. Butler, and concerns relating to the defendant's prior prescribing to him. *See* Discovery Production 6, produced on or around June 29, 2021, at Bates number DOJ_TR_00516624 – DOJ_TR_00516625.

*Id*. The Government represents that it provided Defendant with Le and Belcik's CVs in February 2022, and with Broderick's CV in July 2022. *Id*.

## II. DISCUSSION

The Court first addresses Rule 16, then turns to whether the evidence should be excluded for any other reason.

**A.  Rule 16**

Rule 16(a)(1)(G) provides as follows:

> Expert Witnesses.  At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial . . .The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

The United States Court of Appeals for the Sixth Circuit has provided the following further instructions on Rule 16(a)(1)(G), citing to, and quoting, the Advisory Committee Notes:

> The requesting party is entitled to a summary of the expected testimony.  This provision is intended to permit more complete pretrial preparation by the requesting party.  For example, this should inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion.  In some instances, a generic description of the likely witness and that witness's qualifications may be sufficient, *e.g.*, where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available. . .
>
> In addition, in order to comply with Rule 16(a)(1)(G), the [Advisory Committee] Notes specifically state that, "perhaps most important, the requesting party is to be provided with a summary of the bases of the expert's opinion." . . .
>
> Without regard to whether a party would be entitled to the underlying bases for expert testimony under other provisions of Rule 16, the amendment requires a summary of the bases relied upon by the expert.  That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts.

*United States v. Davis*, 514 F.3d 596, 611–12 (6th Cir. 2008) (cleaned up).

If the Government fails to comply with Rule 16(a)(1)(G), a court may (1) order the Government to permit discovery or inspection, "specify its time, place, and manner; and prescribe other just terms and conditions;" (2) grant a

continuance; (3) exclude the undisclosed evidence; or (4) "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d). However, the Court should not exclude testimony without first considering (1) the reasons for the Government's delay in producing the materials, including any bad faith; (2) the prejudice, if any to the defense; and (3) whether the prejudice "can be cured by any less severe course of action." *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006) (internal quotation marks and citations omitted).

      This is a close case. The Disclosure Letter describes the Witnesses' anticipated testimony in a very broad, vague sense, outlines the most basic bases of their opinions, and references other relevant documents the Government produced to Defendant. Further, the Government produced the Witnesses' CVs to Defendant. To highlight the closeness of this case, consider two Sixth Circuit cases: *United States v. Moran*, 771 F. App'x 594 (6th Cir. 2019) and *United States v. Davis*, 514 F.3d 596, 611–13 (6th Cir. 2008).

      In *Moran*, similar disclosures satisfied Rule 16(a)(1)(G). *See Moran*, 771 F. App'x at 594. In *Moran*, the government's disclosure letter provided a summary paragraph for a computer expert, but the government also provided the expert's CV, the expert's report, complete with a spreadsheet and details about specific computer files and made the expert available to the defense before trial. *Id*. at 600–01. Under those circumstances, the Sixth Circuit held that the district court did not abuse its discretion in finding the disclosure satisfied Rule 16(a)(1)(G). *Id*. at 601.

This case has many similarities to *Moran*. On the one hand, the Disclosure Letter provides a somewhat summary overview of the Witnesses and their proposed testimony. *Compare* ECF No. 74 *with Moran*, 771 F. App'x at 600–01. Further, the Government also provided the Witnesses' CVs and other supporting documents. *Compare* ECF No. 74 *with Moran*, 771 F. App'x at 600–01. On the other hand, none of the supporting documents in this case appear to be as formal as *Moran*'s expert report, and it does not appear that the Government ever made the Witnesses available to the Defense. *Compare* ECF No. 74 *with Moran*, 771 F. App'x at 600–01. On the whole, the Court finds *Moran* at least somewhat analogous to this case.

In *Davis*, however, the Sixth Circuit emphasized the importance of sufficiently disclosing the "bases and reasons" for the proposed expert opinions. *See Davis*, 514 F.3d at 611–13. In *Davis*, the Sixth Circuit evaluated the disclosures of a proposed expert chemist and found the disclosures inadequate because they did not adequately indicate the bases for the chemist's laboratory reports. *Id*. at 613–16. That is, if the defendant had hired his own expert, "he or she would not have been able to analyze the steps that led the government's chemists to their conclusions." *Id*. at 613.

Applying *Davis* here, the disclosures may have been inadequate. *See* ECF No. 74. The Disclosure Letter does not explain the "bases or reasons" for the Witnesses' opinions. *Id*. The Disclosure Letter gives one, generalized basis for the Witnesses' opinions: that their testimony would be "based on their

diagnoses of the identified patient and the patient's prior prescribing." *Id*. As to what specific facts about a patient formed the basis of any individual witness's opinions regarding that patient, the Defendant was left to guess.

It is true that, in addition to the disclosure letter, the Government turned over the Witness's patient files and summaries of interviews with the Witnesses, but neither of those documents provide the required bases for the Witnesses' opinions as to whether Defendant acted outside the scope of professional practice and only partially, if at all, provide the required bases for the Witnesses' opinions about the patients they actually saw.

For example, as to Le and Broderick, the Government provided the relevant patient files to Defendant, and one might reasonably assume that Le's and Broderick's opinions are based, at least in part, on those patient files. However, these patient files provide as many questions as answers. In the Broderick file, there are at least two redacted pages, no easily-findable summaries (if any exist), and the commentaries relating to pain and pain management are brief and provide minimal insight into Broderick's reasoning. Similarly, Le's file covers only two visits and, although it provides the results of a physical exam and summaries of her plan for the patient, the exam results largely support, if anything, an opinion about Le's treatment plan—*not* any opinion about the Defendant. Moreover, Le's summaries are relatively brief and provide no bases for any opinions she may have about Defendant, controlled substances generally, or anything beyond her treatment of the patient named in the file.

Turning to Belcik, it appears he based his opinions of Defendant on an appointment with one of Defendant's patients.  *See* ECF No. 74.  Following this appointment, Belcik made a complaint to the State of Ohio Board of Pharmacy.  Although the Government provides this complaint, they do not provide the underlying patient records.  The complaint provides generalized statements of the bases and reasons of Belcik's opinions like: "upon review of [the] patient's chart," and lists specific medications that raised red flags, but does not explain *why* these medications were concerning or raised red flags.

Although the Government also produced summaries of interviews with all three Witnesses, statements in these interviews vary in helpfulness.  For example, Broderick's interview contains only one reference to Defendant.  In that statement, Broderick said that his patient had not told him she was also seeing Defendant and receiving medications from him and, if he had known, he would have pursued a different treatment plan.  One of Belcik's interview summaries similarly contain conclusions like the patient was "clearly drug seeking" and that Belcik found Defendant's conduct "alarming," but minimal information outlining Belcik's *reasoning* for those conclusions; another interview summary provides more details of his reasoning, so readers are left to piece it together on their own.  Le's interview summaries, at least, provide several details about the bases and reasons for her opinions.

Aside from all this, of course, is that the vast majority of the "bases and reasons" described above relate only to any opinions the Witnesses might have

as to Defendant or their patients specifically, and not as to any opinions they might have about controlled substances generally, the practice of medicine, or any similar quintessential "expert" topic.

Given all these factors, the disclosures might have been inadequate under *Davis*. The Court need not decide, however, whether the disclosures are more like those in *Moran* or *Davis*. Even assuming that the disclosures violated Rule 16(a)(1)(G), any suppression or limitation of the evidence under *this* rule would be inappropriate. As explained above, courts should not exclude testimony without first considering (1) the reasons for the Government's delay in producing the materials, including any bad faith; (2) the prejudice, if any to the defense; and (3) whether the prejudice "can be cured by any less severe course of action." *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006) (internal quotation marks and citations omitted).

Here, even assuming there was a delay in disclosure, there is no indication of bad faith. Second, Defendant has suffered minimal prejudice *from a delayed disclosure* because the large amount of discovery, the nature of the charges, and the disclosures that he did receive all put him on notice that the Government was likely to call medical experts to testify. Finally, any prejudice can be cured by a less drastic measure, such as a limiting instruction or giving Defendant more time to prepare.

For these reasons, even if the Government violated Rule 16(a)(1)(G), exclusion of any of the Witnesses' testimony under Rule 16 is inappropriate.

1. Le's testimony

The Court had not yet addressed these issues at the time Le testified. All of the above analysis applies to her, although her disclosure was the most thorough. Again, the Court finds no evidence of bad faith on the part of the Government, and minimal prejudice to Defendant. Further, the Court observes that Defense counsel engaged in a lengthy and thorough cross-examination of Le. Further, the Court notes that Defendant intends to call his own medical expert, who will have the opportunity to review Le's testimony and refute it. Finally, counsel are receiving daily transcripts of the proceedings, so Defendant's expert would have at least a few days to review the transcript of Le's testimony if necessary.

Under all these circumstances, even if the Government violated Rule 16(a)(1)(G), no further sanction would be necessary as to Le.

**B.   Federal Rules of Evidence**

Setting aside any considerations of Criminal Rule 16, the Court finds it appropriate to limit the proposed expert testimony of Belcik and Broderick under Federal Rule of Evidence 403. Federal district courts have "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41, n. 4 (1984). Part of this inherent authority is ruling on the admissibility of evidence, including testimony. *Id*. Under all the circumstances of this case, the risk of unfair prejudice and undue delay substantially outweigh the probative value of much of

the proposed expert testimony from Belcik and Broderick. *See* Fed. R. Evid. 403.

Some of the problems are apparent in the misleading nature of the Disclosure Letter. First, the Government specifically described the Witnesses as "fact witnesses." Next, the Disclosure Letter very clearly treats Munzing as an expert. It gives almost two pages of descriptions of his qualifications, anticipated testimony, opinions and the bases and reasons for the same. The Government provided three separate expert reports from Munzing.[1] In contrast, the Witnesses were listed in a different heading, were discussed as a group, their individual discussion comprised of a paragraph each, and—as explained above—they were described as "fact witnesses." If the Government wanted the Witnesses to give expert testimony (and Dr. Le's testimony demonstrates that the Government does, indeed, want that expert testimony), there is no reason to have treated the Witnesses so differently from Munzing in the Disclosure Letter.

The Government doubled-down on these problems before the Court. In the Final Pretrial Conference, conferences during trial, and even during sidebars in the middle of witness testimony, the Government repeatedly insisted that witnesses like Le and a pharmacist were not experts. Then, when those witnesses were on the stand, the Government would ask those witnesses questions eliciting expert testimony. Indeed, at least one point, the Government

---

[1] The Court recognizes that such expert reports are not required under Rule 16.

specifically prefaced a question by asking the witness to rely on his "training and expertise." It seems apparent that the Government believes any witness who personally observed some events related to the charged conduct can be labelled a "fact witness" and yet can still give expert testimony as the government sees fit. *See* Fed. R. Evid. 701, Advisory Committee Notes (2000) (discussing the difference between expert *witnesses* and expert *testimony*).

Moreover, the Government seems unable to follow the Court's instructions during examinations. On several occasions during Le's direct examination, the Court instructed the Government to focus its questions on her treatment of the relevant patient. The Government repeatedly declined to follow the Court's instructions. So, the Court lacks confidence that the Government would follow similar instructions in the moment with Belcik and Broderick.

For all these reasons, the Court finds any proposed expert testimony beyond any opinions about A.B.—the patient Belcik and Broderick actually treated—has the danger of being unfairly prejudicially. In addition, any further expert testimony beyond opinions about A.B. would likely cause undue delay and be needlessly cumulative. The Government already elicited substantial expert testimony from Le about controlled substances generally, opioids specifically, and the practice of medicine, among other topics. Additionally, they plan to call Munzing about, apparently, substantially similar topics. Having two more medical professionals offer more testimony about the same topics is unnecessary.

At bottom, any probative value of Belcik's and Broderick's proposed expert testimony about topics beyond A.B. is substantially outweighed by the risk of unfair prejudice, undue delay, and needlessly presenting cumulative evidence. As such, **IT IS EXCLUDED**.

**C.    Other Issues**

The Court has significant concerns about the relevancy of some of the proposed fact testimony of Belcik and Broderick. Specifically, it is not clear to the Court how Defendant had knowledge of what occurred in these practitioners' offices (*e.g.*, A.B.'s alleged drug-seeking behavior or dishonesty with her practitioners), and, if Defendant did not have knowledge of those events, it is not clear how those events have "any tendency to make a fact [in consequence] more or less probable." Fed. R. Evid. 401.

Prior to questioning either Belcik or Broderick, the Government is **ORDERED** to explain to the Court how the anticipated fact testimony is relevant.

### III.    CONCLUSION

For these reasons, any expert testimony from Belcik and Broderick beyond their treatment of A.B. **IS EXCLUDED**. Prior to questioning either of them in their fact-witness capacity, the Government is **ORDERED** to explain to the Court how the anticipated fact testimony described above is relevant.

**IT IS SO ORDERED.**

                                            */s/ Michael H. Watson*
                                        **MICHAEL H. WATSON, JUDGE**
                                        **UNITED STATES DISTRICT COURT**